# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Timothy Hare,

               Petitioner,     Case No. 21-10454

v.                            Judith E. Levy
                                United States District Judge

Gary Minard,

                          Mag. Judge R. Steven Whalen

               Respondent.

_____/

# OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS [1], DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*

Petitioner Timothy Hare, currently confined at the Saginaw Correctional Facility in Freeland, Michigan, filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his conviction for one count of first-degree criminal sexual conduct, Mich. Comp. Laws § 750.520b(2)(b), and two counts of second-degree criminal sexual conduct, Mich. Comp. Laws § 750.520c(1)(b).

For the reasons set forth below, the petition for writ of habeas corpus is DENIED WITH PREJUDICE.

## I.    Background

Petitioner was convicted following a jury trial in Saginaw County

Circuit Court. The circumstances that led to Petitioner's conviction were

described by the Michigan Court of Appeals' opinion that affirmed his

conviction:

> The jury trial in this matter lasted three and a half days and
> involved the testimony of 14 witnesses. The prosecution
> presented seven witnesses, including the victim and an expert
> witness. The victim testified that defendant sexually abused
> her over the course of several years, and alleged that
> defendant's conduct included inappropriate touching, lewd
> comments and gestures, and three separate instances when
> defendant allegedly penetrated her vagina: once with his
> hand, once with a sex toy, and once with his penis. Defendant,
> who testified in his defense, denied the allegations and
> asserted that the victim fabricated the sexual-abuse
> allegations. This was in line with defense counsel's theory of
> the case, which was that the victim fabricated the sexual-
> abuse allegations because she wanted to move out of the
> family home and live with a couple that is now the victim's
> foster placement, the Demijohns. In support of this theory,
> defense counsel focused on the time that the victim spent with
> the Demijohns and the items that the Demijohns were able to
> buy for her. Defense counsel implied that the Demijohns had
> enticed the victim to leave her family home with lavish gifts
> and promises of helping to pay for her college education. Also,
> based on part of defendant's testimony, defense counsel
> accused Traci Demijohn of trying to convince the victim to run
> away from home and come live with her.

*People v. Hare*, No. 333876, 2017 WL 4557091, at *3 (Mich. Ct. App. Oct.

12, 2017).

2

Petitioner's conviction was affirmed on appeal. *Id., leave to appeal denied*, 501 Mich. 1039 (2018).

Petitioner filed a post-conviction motion for relief from judgment, which was denied by the trial judge. *People v. Hare*, No. 15-041631-FC (Saginaw Cnty. Cir. Ct., Sept. 27, 2018) (ECF No. 6-14, PageID.541–545); *reconsideration denied*, No. 15-041631-FC (Saginaw Cnty. Cir. Ct., Oct. 25, 2018). (ECF No. 6-15, PageID.560–561.) Petitioner's post-conviction appeal was denied, *People v. Hare*, No. 346627 (Mich. Ct. App. May 22, 2019), and Petitioner's application for leave to appeal was denied. *People v. Hare*, 505 Mich. 1127 (2020). Petitioner's petition for writ of certiorari to the Supreme Court of Michigan was also denied. *Hare v. Michigan*, 141 S. Ct. 1272 (Mich. 2021).

Petitioner then filed this petition for a writ of habeas corpus. Petitioner seeks a writ of habeas corpus on the following grounds:

> I. Trial counsel was ineffective for failing to advise
> Defendant of a proposed plea bargain.
>
> II. Appellate counsel failed to raise issue of trial counsel's
> ineffectiveness related to plea offer.
>
> III. Trial court decided claim of ineffective assistance of
> counsel without an evidentiary hearing.

IV. Trial court limited the Defendant's ability to present an expert by capping funds at $3,000.00.

V. Defense counsel was ineffective for failing to request additional funds to allow expert to testify at trial.

(ECF No. 1, PageID.5–12.) Respondent filed an answer in opposition. (ECF No. 5.) Petitioner subsequently filed a traverse. (ECF No. 7.)

## II.   Standard of Review

28 U.S.C. § 2254(d), as amended by the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), sets forth the standard of review for habeas cases. Habeas Petitioners raising claims previously adjudicated by state courts must show that the state-court decision "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Under § 2254(d)(1), a state court decision is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state

4

court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A conclusion that the state-court decision was incorrect or erroneous is not sufficient; it must be unreasonable. *Id.* at 410–11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Therefore, in order to obtain habeas relief in federal court under § 2254(d)(1), a state prisoner is required to show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

Petitioner's first, second, and third claims were raised in his post-conviction motion for relief from judgment. (*See* ECF No. 6-19.) In reviewing a claim under the AEDPA's deferential standard of review, the Court must review "the last state court to issue a reasoned opinion on the

issue." *Hoffner v. Bradshaw*, 622 F.3d 487, 505 (6th Cir. 2010) (quoting *Payne v. Bell*, 418 F.3d 644, 660 (6th Cir. 2005)). The Michigan Court of Appeals and the Michigan Supreme Court both denied Petitioner's post-conviction application for leave to appeal in unexplained, one-sentence orders. *Hare*, 505 Mich. 1127; *Hare*, No. 346627. Accordingly, this Court must "look through" these decisions to the Saginaw County Circuit Court opinion denying the motion for relief from judgment (ECF No. 6-14), which was the last state court to issue a reasoned opinion. Then, the Court can decide whether that court's adjudication of Petitioner's claims was "contrary to," or "an unreasonable application of" clearly established federal law as determined by the United States Supreme Court. *See Hamilton v. Jackson*, 416 F. App'x 501, 505 (6th Cir. 2011).

The Saginaw County Circuit Court procedurally defaulted the claims pursuant to Michigan Court Rule 6.508(D)(3) because Petitioner failed to show cause and prejudice for failing to raise these claims on his appeal of right. (ECF No. 6-14, PageID.545.) The judge also denied Petitioner's post-conviction claims on the merits. (*Id.*) Thus, the AEDPA's deferential standard of review applies to that opinion. *See Moritz v. Lafler*, 525 F. App'x 277, 284 (6th Cir. 2013).

The Michigan Court of Appeals reviewed and rejected Petitioner's fourth and fifth claim involving the failure of the judge to approve additional funds for an expert witness under a plain error standard because Petitioner failed to preserve the issue as a constitutional claim at the trial court level. (ECF No. 6-17.) The AEDPA deference applies to any underlying plain-error analysis of a procedurally defaulted claim. *See Stewart v. Trierweiler*, 867 F.3d 633, 638 (6th Cir. 2017).

## III.  Analysis

### A.    The procedural default issue

Respondent urges the Court to procedurally default Petitioner's first and second claims. (ECF No. 5, PageID.63–68, 78–80.) Respondent claims that Petitioner has not shown cause for his failure to follow state procedure (as described in Michigan Court Rule 6.508(D)(3)), nor has he demonstrated prejudice as a result of the alleged violation of federal law. (*Id.*) Respondent also argues that Petitioner's fourth claim is also procedurally defaulted because Petitioner failed to preserve the issue by requesting additional funding from the trial judge. (*Id.* at PageID.85–88.) Petitioner argues in his fifth claim that trial counsel was ineffective for failing to request additional funding and argues in his second claim that

7

appellate counsel was ineffective for failing to raise his first claim in his appeal of right.

Ineffective assistance of counsel may establish cause for procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451–52 (2000). A defendant must satisfy a two-prong test to establish the denial of the effective assistance of counsel. First, the defendant must show that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*. In other words, the defendant must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Id*. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id*. at 687. To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective

assistance of counsel, not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *Id.*; *see also Wong v. Belmontes*, 558 U.S. 15, 27 (2009). The *Strickland* standard also applies to claims of ineffective assistance of appellate counsel. *See Whiting v. Burt*, 395 F.3d 602, 617 (6th Cir. 2005).

Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of Petitioner's defaulted claims, the Court will consider the merits of the claims. *See Cameron v. Birkett*, 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004). In addition, Petitioner could not procedurally default his second claim because post-conviction review was the first opportunity he had to raise this claim. *See Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010).

## B.   Claim 1. Trial counsel was ineffective for failing to communicate a plea offer to Petitioner.

Petitioner first alleges that his trial counsel never advised him of a plea offer from the prosecutor. Petitioner points to a letter from Saginaw County Assistant Prosecuting Attorney Angelina Scarpelli dated December 9, 2015. (*See* ECF No. 6-13, PageID.532.) In the letter to defense counsel, Ms. Scarpelli offers to let Petitioner plead guilty to two

9

counts of first-degree criminal sexual conduct, with an agreed upon sentence within the sentencing guidelines range of 81-135 months. (*Id.*) The remaining counts would be dismissed. Ms. Scarpelli in bold letters indicates that "This would avoid the mandatory minimum of 25 years on Counts 3 & 4." (*Id.*) Ms. Scarpelli also writes: "Please do not hesitate to contact me if you have any questions[,] concerns, or counter-offers." (*Id.*)

After trial, Petitioner was sentenced to twenty-five to fifty years in prison on the first-degree criminal sexual conduct conviction and received eight to fifteen years in prison on the second-degree criminal sexual conduct conviction. (ECF No. 6-14, PageID.541–542.) Petitioner claims he did not learn of the plea offer until he requested his file from appellate counsel at the conclusion of his appeal of right. (ECF No. 7, PageID.796.)

The Sixth Amendment right to counsel extends to the plea bargaining process. *Lafler v. Cooper*, 566 U.S. 156, 162–63 (2012); *Missouri v. Frye*, 566 U.S. 134, 143–44 (2012). Thus, a criminal defendant during plea negotiations is "entitled to the effective assistance of competent counsel." *Lafler*, 566 U.S. at 162 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). In order to establish that he was prejudiced by counsel's alleged deficiency during plea bargaining,

10

[A] defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Lafler*, 566 U.S. at 164.

Petitioner raised this claim in his post-conviction motion for relief from judgment. The trial judge rejected it:

[E]ven if Defendant would have accepted the plea offer extended by the prosecution, he cannot satisfy the remaining elements of the *Lafler* inquiry. Under the plea agreement offered by the prosecution, Defendant would have plead [sic] guilty to two counts of [Criminal Sexual Conduct ("CSC")] 1st in exchange for a dismissal of the CSC 2nd charges and the prosecutor's recommendation that the Court impose concurrent sentences within a stipulated sentencing guidelines range of 81 months (6 years, 9 months) to 135 months (11 years, 3 months). The prosecutor further represented that the plea offer would avoid the mandatory 25-year minimum sentence on Counts 3 & 4 (the CSC 1st charges). This statement by the prosecution was incorrect.

Pursuant to MCL 750.520b(2)(b), CSC 1st is punishable by not less than 25 years "[f]or a violation that is committed by an individual 17 years of age or older against an individual less than 13 years of age[.]" Here, it is undisputed that Defendant was over 17 years of age and the victim was less than 13 years of age at the time of the two penetrations that formed the

basis of the CSC 1st charges . . . . Accordingly, under MCL 750.520b(2)(b), this Court lacked the authority to impose a minimum sentence of less than 25 years under the terms of the plea offered by the prosecution. As such, the Court finds that Defendant cannot establish the final three prongs of *Lafler*; specifically, that the prosecutor would not have withdrawn the plea offer in light of intervening circumstances; that the Court would have accepted Defendant's plea under the terms proposed by the prosecutor; and that Defendant's sentence under the plea offer would have been less severe than the 25-year minimum sentence that was ultimately imposed by the Court following his trial.

To be clear, even if Defendant would have accepted the prosecution's plea offer to plead guilty to two counts of CSC 1st, and the prosecutor had not withdrawn the offer, the Court would not have followed the prosecutor's recommendation to impose sentences within a stipulated guidelines range of 81 months to 135 months. Instead, this Court would have followed the Legislature's directive under MCL 750.520b(2)(b), and would have imposed mandatory minimum sentences of 25 years. Because Defendant's sentences, if he had accepted the plea agreement, would not have been less severe than the sentences he actually received, Defendant was not prejudiced by his trial counsel's purported failure to advise him of the plea offer extended by the prosecution on December 9, 2015.

*People v. Hare*, No. 15–041631–FC, at *4–5 (Saginaw Cnty. Cir. Ct. Sept. 27, 2018) (internal footnote omitted). (ECF No. 6-14, PageID.544–545.)

The trial judge's rejection of Petitioner's claim was reasonable and precludes relief.

Petitioner is not entitled to relief on his claim because the plea offer made by the prosecutor could not have been accepted by the judge. The prosecutor proposed to let Petitioner plead guilty to two counts of first-degree criminal sexual conduct with an agreed guideline range of 81 to 135 months. (ECF No. 6-14, PageID.542.) However, under Michigan Compiled Laws § 750.520b(2)(b), the sentence for a violation that is committed by an individual 17 years of age or older against an individual less than 13 years of age is not less than twenty-five years in prison. It is not disputed that Petitioner was over 17 years of age and the victim was less than 13 years of age at the time of the two penetrations that formed the basis of the first-degree criminal sexual conduct charges. As a matter of state law, the judge could not have followed the plea agreement. The judge was required to sentence Petitioner to at least twenty-five years in prison or, in the alternative, would have rejected the plea offer. Because the judge was required to sentence Petitioner to a minimum of twenty-five years in prison on the first-degree criminal sexual conduct conviction, Petitioner is unable to show that he was prejudiced by

13

counsel's alleged failure to convey the plea agreement to him. *See Carson v. United States*, 88 F.4th 633, 641–42 (6th Cir. 2023).

To the extent Petitioner alleges that the prosecutor would have offered him a new deal that was amenable to him, and the trial judge would have accepted it, this claim must be rejected as being speculative. *Id.*

Petitioner argues that trial counsel's failure to convey the plea offer to him amounted to the constructive denial of counsel and as a result, his conviction should be automatically reversed. (ECF No. 7, PageID.803–804.)

The United States Supreme Court has clearly established that the complete denial of counsel during a critical stage of a judicial proceeding mandates a presumption of prejudice. *United States v. Cronic*, 466 U.S. 648, 659 (1984). The existence of certain structural defects in a trial, such as the deprivation of the right to counsel, "requires automatic reversal of the conviction because [it] infect[s] the entire trial process." *Brecht v. Abrahamson*, 507 U.S. 619, 629–30 (1993). The Supreme Court has found constitutional error without any specific showing of prejudice to a defendant "when counsel was either totally absent, or prevented from

14

assisting the accused during a critical stage of the proceedings." *Cronic*, 466 U.S. at 659 n.25 (collecting cases); *United States v. Minsky*, 963 F.2d 870, 874 (6th Cir. 1992).

> Defendants are entitled to this presumption in three situations:
>
> (1) the "complete denial of counsel," including situations where counsel was absent at a "critical stage" of the proceedings; (2) situations where defense counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing;" and (3) situations where "the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate."

*Fuller v. Sherry*, 405 F. App'x 980, 985 (6th Cir. 2010) (quoting *Cronic,* 466 U.S. at 659–60).

There are several problems with Petitioner's argument. First, Petitioner's *Cronic* claim is being presented for the first time in Petitioner's reply brief, rather than in his habeas petition; thus, this claim is not properly before the Court. *See Murphy v. Ohio*, 551 F.3d 485, 502 (6th Cir. 2009); *see also Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005). "[A] traverse or reply to an answer to a habeas petition is not the proper pleading for a habeas petitioner to raise additional grounds for relief." *Burns v. Lafler,* 328 F. Supp. 2d 711, 724 (E.D. Mich. 2004) (citing *Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994)).

Secondly, it does not appear that Petitioner exhausted any *Cronic* claim in his post-conviction motion or post-conviction appeal. As a general rule, a state prisoner seeking federal habeas relief must first exhaust his available state court remedies before raising a claim in federal court. 28 U.S.C. § 2254(b)–(c). "The AEDPA preserves the traditional exhaustion requirement, which mandates dismissal of a habeas petition containing claims that the petitioner has a right to raise in state court, but failed to do so." *Welch v. Burke*, 49 F. Supp. 2d 992, 998 (E.D. Mich. 1999). Although exhaustion is not a jurisdictional matter, "it is a threshold question that must be resolved before [a federal court] can reach the merits of any claim" contained in a habeas petition. *Wagner v. Smith*, 581 F.3d 410, 415 (6th Cir. 2009). "Therefore, each claim must be reviewed [by a federal court] for exhaustion before any claim may be reviewed on the merits." *Id.*

A claim may be considered "fairly presented" only if the petitioner asserted both the factual and legal basis for his claim in state court. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). The doctrine of exhaustion mandates that the same claim under the same theory be presented to the state courts before it can be raised in a federal habeas

petition. *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998). "Even the same claim, if raised on different grounds, is not exhausted for the purpose of federal habeas review." *Rayner v. Mills*, 685 F.3d 631, 643 (6th Cir. 2012).

A claim involving the constructive denial of counsel is separate and distinct from an ineffective assistance of counsel claim. *See Fusi v. O'Brien*, 621 F.3d 1, 6 (1st Cir. 2010). Although *Cronic* and *Strickland* both concern the Sixth Amendment, *Strickland* "requires a case-by-case analysis of whether counsel's deficiencies affected the outcome of a trial, while *Cronic* permits a presumption of prejudice if an actual or constructive denial of counsel occurs during a critical stage of the trial. . . . A defendant's reliance on one theory in state court does not exhaust the other." *Id.* A review of Petitioner's post-conviction appeal briefs shows that he did not raise a constructive denial of counsel claim on his post-conviction appeal. (ECF No. 6-19, PageID.694–709; ECF No. 6-20, PageID.739–740.) Petitioner's constructive denial claim is unexhausted.

Petitioner no longer has any available state court remedies with which to exhaust any constructive denial of counsel claim. Under Michigan Court Rule 6.502(G)(1), a criminal defendant in Michigan is

only permitted to file one post-conviction motion for relief from judgment. *See Gadomski v. Renico*, 258 F. App'x 781, 783 (6th Cir. 2007).

"If a prisoner fails to present his claims to the state courts and he is now barred from pursuing relief there, his petition should not be dismissed for lack of exhaustion because there are simply no remedies available for him to exhaust. However, the prisoner will not be allowed to present claims never before presented in the state courts unless he can show cause to excuse his failure to present the claims in the state courts and actual prejudice to his defense at trial or on appeal." *Hannah v. Conley*, 49 F. 3d 1193, 1195–96 (6th Cir. 1995). "The cause and prejudice requirement may be excused in the extraordinary case 'where a constitutional violation has probably resulted in the conviction of one who is actually innocent . . . .'" *Id.* at 1196 n.3 (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).

Petitioner has not established cause to excuse his default with respect to any constructive denial of counsel claim. While ineffective assistance of appellate counsel might excuse Petitioner's failure to raise his ineffective assistance of counsel claims on his direct appeal, it does not excuse Petitioner's own failure to exhaust any *Cronic* claim in his

18

post-conviction motion for relief from judgment or appeal. *See Gadomski*, 258 F. App'x at 784. Nor has Petitioner presented any evidence of actual innocence to excuse his failure to exhaust this claim. The Court cannot consider Petitioner's defaulted *Cronic* claim as a ground for relief.

Thus, Petitioner is not entitled to relief on his first claim.

## C.    Claim 2. Ineffective assistance of appellate counsel

Petitioner argues that appellate counsel was ineffective for failing to raise his first claim on his appeal of right.

The Sixth Amendment guarantees a defendant the right to the effective assistance of appellate counsel both on appeals of right, *see Evitts v. Lucey*, 469 U.S. 387, 396–97 (1985), and on first-tier discretionary appeals. *Halbert v. Michigan*, 545 U.S. 605, 609–10 (2005). Nonetheless, court-appointed counsel does not have a constitutional duty to raise every non-frivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). A habeas court reviewing an ineffective assistance of appellate counsel claim must defer twice: first to appellate counsel's decision not to raise an issue and, second, to the state court's determination that appellate counsel was not ineffective. *Woods v. Etherton*, 578 U.S. 113, 119 (2016) (per curiam).

19

Petitioner's first claim – that his trial counsel was ineffective during plea negotiations – is meritless. "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F. 3d 448, 452 (6th Cir. 2010) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). Accordingly, appellate counsel was not ineffective for failing to raise this issue on Petitioner's appeal of right. Petitioner is not entitled to relief on his second claim.

### D.   Claim 3. Evidentiary hearing

In Petitioner's third claim, he argues that the judge on post-conviction review erred in denying his first and second claims without first conducting an evidentiary hearing. However, the Court does not have the power to grant habeas relief on this claim.

"The Sixth Circuit has consistently held that errors in post-conviction proceedings are outside the scope of federal habeas corpus review." *Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007). This is because states have no constitutional obligation to provide post-conviction remedies. *Greer v. Mitchell*, 264 F.3d 663, 681 (6th Cir. 2001) (citing *Pennsylvania v. Finley,* 481 U.S. 551, 557 (1987)). Thus, the denial of an evidentiary hearing by a state court on post-conviction review does

not state a claim upon which habeas relief can be granted. *See*, *e.g.*, *Cornwell v. Bradshaw*, 559 F.3d 398, 411 (6th Cir. 2009). Because Petitioner sought an evidentiary hearing with respect to the ineffective assistance of counsel claims that he raised in his post-conviction motion, the failure by the state courts to grant him an evidentiary hearing on this claim would not entitle him to relief.

Moreover, there is no clearly established Supreme Court law which recognizes a constitutional right to a state court evidentiary hearing to develop a claim of ineffective assistance of counsel, even on direct appeal. *See Hayes v. Prelesnik,* 193 F. App'x 577, 584–85 (6th Cir. 2006). Accordingly, Petitioner is not entitled to habeas relief on his claim that the trial court failed to conduct an evidentiary hearing on his ineffective assistance of trial and appellate counsel claims.

### E.   Claim 4. Expert witness funding

Petitioner claims that his right to an expert witness and his right to present a defense were violated because the trial judge capped the funds for the expert at $ 3,000.00. (ECF No. 1, PageID.10.)

The Michigan Court of Appeals rejected this claim:

Before trial, defense counsel moved for the appointment, at court expense, of an expert witness "in the area of clinical

21

psychology, particularly as it relates to the forensic interviewing protocol and reporting characteristics of minors alleging sexual assault." The trial court granted the motion but capped payment at $1,500. Defense counsel later filed a second motion for appointment of an expert and explained to the trial court that the original expert witness had declined to take the case for less than $4,000. According to defense counsel, he had located a different expert witness, Dr. Daniel H. Swerdlow–Freed, who, for a quoted fee of $3,000, was willing to review the victim's three interviews, the transcripts of those interviews, and all the discovery materials provided to the defense, and then consult with and advise defense counsel as to whether child protective services followed proper forensic interview protocols when it interviewed the victim. Defense counsel indicated that the quoted fee would "not include trial testimony, should it be necessary." Defense counsel requested that the trial court appoint Dr. Swerdlow–Freed "as an expert witness for the defense in the area for Forensic Interview Protocol, and authorize payment to him of $3,000.00 from County funds at County expense." The trial court granted defendant's request to increase his allowable expert-witness fee, approving "a maximum fee of $3,000.00 for ... reviewing the discovery materials and DVD's and consulting with defense counsel and testifying at trial, if necessary."

On appeal, defendant argues that the trial court abused its discretion by imposing a maximum fee of $3,000 for a court-appointed expert to review the relevant discovery materials and testify at trial. We disagree. Following the trial court's order granting defense counsel's request for $3,000 in expert-witness fees, defense counsel never requested the trial court to authorize additional funds for the expert or otherwise

indicated to the trial court that he wanted the expert to testify at trial. Accordingly, although "[t]his Court generally reviews a trial court's decision whether to grant an indigent defendant's motion for the appointment of an expert for an abuse of discretion," *People v. Tanner*, 469 Mich. 437, 442; 671 N.W.2d 728 (2003), under these circumstances, the issue defendant raises on appeal was never before the trial court and is therefore reviewed for plain error affecting substantial rights, *People v. Carines*, 460 Mich. 750, 763–764; 597 N.W.2d 130 (1999).

When defense counsel initially moved for appointment of an expert to testify at trial at court expense, the trial court granted the motion. When defense counsel moved the trial court for an increase in the allowable expert-witness fee, the trial court granted the motion and authorized the requested funds. Had defense counsel requested additional funds to allow the expert to testify at trial, there is no indication on the record that the trial court would have been unreceptive to that request. Further, we note that the expert witness who testified on behalf of the prosecution indicated that she was paid a flat fee of $2,000 for her expert-witness services. The prosecution's expert not only reviewed the same materials reviewed by defendant's court-appointed expert, but the prosecution's expert also provided trial testimony for the quoted fee. Therefore, it appears that the $3,000 limit on expert-witness fees was not unreasonable. Accordingly, because the trial court granted defendant's motion to appoint an expert witness and authorized witness fees in the amount requested, and defendant never indicated that the authorized amount was insufficient, defendant has failed to establish that the trial court's decision to limit defendant's expert-witness fees to $3,000 was plain error.

Defendant relatedly argues that the trial court's decision to limit his expert-witness fees to $3,000 was error because it limited his defense. We disagree. "Without an indication that expert testimony would likely benefit the defense," the fact that an expert did not testify on a defendant's behalf is not reversible error. *People v. Carnicom*, 272 Mich. App. 614, 617; 727 N.W.2d 399 (2006). On the record before us, there is no indication that expert testimony would have likely benefitted defendant's defense. With court funds, defendant obtained an expert, who then reviewed the relevant materials for defendant's case. For unknown reasons, defense counsel did not see fit for the expert to testify at defendant's trial. On appeal, defendant has not provided any basis for us to conclude that defense counsel's decision was due to the trial court's $3,000 limit on expert-witness fees, and we see no reason based on the record to do so. It very well could have been that, after the expert reviewed the materials and discussed them with defense counsel, defense counsel decided that the expert's testimony would be detrimental to defendant's defense. Accordingly, without any indication that the expert could have, in fact, benefitted defendant's defense, we cannot conclude that the trial court plainly erred by limiting defendant's expert-witness fee to $3,000. See *id.* ("It is not enough for the defendant to show a mere possibility of assistance from the requested expert.").

*Hare*, 2017 WL 4557091, at *1–2.

The Michigan Court of Appeals' decision was reasonable, precluding habeas relief. Petitioner's counsel never made a request for additional funding. As a result, there is no indication that the judge

24

would not have granted a motion for additional funding. Counsel apparently chose not to call this expert as a witness or seek additional funding for the purpose of trial. "Petitioner cannot convert a tactical decision not to introduce evidence into a constitutional violation of the right to present evidence generally." *Rodriguez v. Zavaras*, 42 F. Supp. 2d 1059, 1150 (D. Colo. 1999).

Finally, Petitioner did not present evidence in the state court proceedings, nor in his petition, that Dr. Swerdlow-Freed would have been prepared to testify favorably on Petitioner's behalf. Petitioner is not entitled to habeas relief on a right to present a defense claim that is merely speculative. *See, e.g.*, *Keith v. Mitchell*, 455 F.3d 662, 672 (6th Cir. 2006).

Petitioner is not entitled to relief on his fourth claim.

## F.   Claim 5. The related ineffective assistance of counsel claim

Petitioner's fifth claim alleges that trial counsel was ineffective for failing to request additional funding so that his expert witness could testify.

The Michigan Court of Appeals rejected the claim:

On appeal, defendant contends that an expert would have been able to explain why the victim fabricated the alleged sexual assault. However, defense counsel's strategy at trial centered on bringing the victim's credibility into question, which it sufficiently did by arguing that the victim was influenced by the Demijohns to fabricate the sexual-abuse allegations. Defense counsel then properly left the ultimate determination of the victim's credibility to the jury. Defendant does not explain what additional testimony from an expert regarding the victim's credibility would have accomplished that defense counsel's trial strategy did not. Moreover, as previously discussed, nothing in the record supports that defendant's expert would have testified favorably towards defendant. Absent such a showing, this Court has no basis to conclude that counsel was ineffective for failing to call the expert. In fact, after consulting with the expert, defense counsel may have decided not to call the expert because the expert's testimony would have been detrimental to defendant. Accordingly, defendant has failed to establish that it was objectively unreasonable for defense counsel to not request additional funds for an expert beyond the $3,000 authorized by the trial court. And even if it was objectively unreasonable, defendant has failed to establish that the error was likely outcome determinative.

*Hare*, 2017 WL 4557091, at *3 (internal citations omitted).

The Michigan Court of Appeals' decision was reasonable, precluding habeas relief. A petitioner's claim that trial counsel was ineffective for failing to call an expert witness cannot be based on speculation. *See Keith*, 455 F.3d at 672. Petitioner presented no evidence

to the Michigan courts or this Court that Dr. Swerdlow-Freed would have testified favorably on his behalf. In the absence of such proof, the Petitioner is unable to establish that he was prejudiced by counsel's failure to call Dr. Swerdlow-Freed to testify at trial, so as to support the second prong of an ineffective assistance of counsel claim. *See Clark v. Waller*, 490 F.3d 551, 557 (6th Cir. 2007). Petitioner is not entitled to relief on his fifth claim.

## IV.   Conclusion

Petitioner's writ of habeas corpus is DENIED.

Before Petitioner may appeal the Court's decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the

petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* at 484. In this case, jurists of reason could not find the Court's ruling debatable as Petitioner failed to make a substantial showing of the denial of a federal constitutional right. Accordingly, the Court DENIES a certificate of appealability.

An appeal from this decision cannot be taken in good faith. *See* Fed. R. App. P. 24(a). Accordingly, the Court DENIES Petitioner leave to proceed without prepayment of fees on appeal.

**IT IS SO ORDERED.**

Dated: March 19, 2024          s/Judith E. Levy
Ann Arbor, Michigan           JUDITH E. LEVY
                              United States District Judge

<u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 19, 2024.

                              s/William Barkholz
                              WILLIAM BARKHOLZ
                              Case Manager

28